IN THE UNITED STATES BANKRUPTCY COURT
Middle District of Louisiana

| | | |
|---|---|---|
| **IN RE**: | } | **CASE NO.** 05-10624 |
| Harold Lyssy | } } | Chapter 7 |
| **DEBTOR** | } | |
| Mary Smith Lyssy White | } } | |
| **PLAINTIFF** | } | |
| **VERSUS** | } | **ADVERSARY NO.** 05-1074 |
| Harold Lyssy | } } | |
| **DEFENDANT** | } | |

## PRETRIAL MEMORANDUM BY MARY SMITH LYSSY WHITE

**Statement of Facts:**

This matter comes before the court on a Complaint to Determine Dischargeability filed by Mary Smith Lyssy White, the ex-wife of the defendant, Harold Lyssy. The parties were married on January 18, 1969 and subsequently divorced on February 6, 1986. During their marriage, Harold Lyssy was a member of the armed forces and acquired certain retirement benefits from the United States military, including a military pension. Upon their separation, Ms. White contends that she and Mr. Lyssy agreed that she would receive a portion of his monthly military retirement benefit. At a certain point following their divorce, Mr. Lyssy began receiving benefits from his military pension, but did not provide any portion of the monthly benefit amount to Ms. White. Ms. White subsequently filed a partition action in East Baton Rouge Parish Family Court, which resulted in a judgment rendered by Family Court Judge Annette LaSalle in which she was granted 34.375% of Mr. Lyssy's military retirement benefits. As part of that judgment, she was also awarded the sum of $88,187.16, representing her portion (34.375%) of the military

retirement benefits which Mr. Lyssy had already received as of January 1, 2005.

Following Judge LaSalle's ruling in favor of Ms. White, Mr. Lyssy filed a Chapter 7 bankruptcy. Ms. White then filed the present Complaint to Determine Dischargeability, seeking to have the debt owed to her, namely the $88,187.16 in retroactive military retirement benefits, declared non-dischargeable. Mr. Lyssy then amended his bankruptcy case to Chapter 13, which effectively eliminated all but one of Ms. White's grounds for seeking to deny her ex-husband a discharge as to this debt.

**Law and Argument:**

Following Mr. Lyssy's conversion to Chapter 13, the only remaining relevant provision in this case is 11 U.S.C. Sec. 523(a)(5). This provision indicates that a debtor will not be discharged from a debt "to a spouse, former spouse or child, for alimony to, or maintenance for, or support of such spouse . . ." 11 U.S.C. Sec. 523(a)(5).

The foundation of this section is to protect an obligation based "on the natural and legal duty of a husband to support the wife" from discharge in bankruptcy. Audubon v. Shufeldt, 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009 (1901); Wetmore v. Markoe, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904). The first inquiry is to determine if the duty of support exists between the parties, and this question is determined by state law. In re Warner, 5 B.R. 434, 6 Bankr.Ct. Dec. (CRR) 788, Bankr.L.Rep. (CCH) 67631 (Bankr. D. Utah 1980); In re Carrigg, 04 B.R. 658, 8 Bankr.Ct. Dec. (CRR) 330, 5 Collier Bankr. Cas. 2d (MB) 446 (Bankr. D.S.C. 1981).

LSA-C.C. Art. 98 says, "Married persons owe each other fidelity, support and assistance." After marriage, LSA-C.C. Art. 111 says, "In a proceeding for divorce or thereafter, the court . . . may award final periodic support to a party free from fault." Based on a former spouse's need, the family court has the authority to award support to the spouse from his or her former spouse. Additionally, Ms. White alleges that she and Mr. Lyssy agreed upon their

separation that he would provide a portion of his military retirement benefits to her and for her support.  Oral contracts are recognized as valid and enforceable in Louisiana, see LSA-C.C. Arts. 1831, 1846.  Former spouses have the right to stipulate and agree between themselves to provide support to each other, without resorting to legal proceedings.  In this case, Mary Smith Lyssy White contends that the parties intended the benefits provided to her under the military retirement would, at least in part, be in discharge of Mr. Lyssy's state court duty to support her.

Once the duty of support has been established by state law, whether or not that obligation is nondischargable is determined by federal law.  Sylvester v. Sylvester, 865 F.2d 1164, 19 Bankr.Ct. Dec. (CRR) 44, Bankr.L.Rep. (CCH) 72632 (10th Cir. 1989); In re Harrell, 754 F.2d 902, 12 Bankr.Ct. Dec. (CRR), 12 Collier Bankr. Cas. 2d (MB) 340, Bankr.L.Rep. (CCH) 70299 (11th Cir. 1985).  The federal courts have taken different approaches with regard to charaterising debts under 523(a)(5) as dischargeable or non-dischargeable.  One approach seeks to determine whether the debt was created for the purpose of discharging the duty of support.  In re Adams, 25 F.2d 640 (C.C.A. 2d Cir. 1928).  The other approach, utilized mostly by the Sixth Circuit, looks to the nature of the debt and whether or not it conforms to a traditional support obligation.  In re Calhoun, 715 F.2d 1103, 10 Bankr.Ct. Dec. (CRR) 1402, 9 Collier Bankr. Cas. 2d (MB) 290, Bankr.L.Rep. (CCH) 69349 (6th Cir. 1983).  However, for practical purposes, "most courts in cases arising under the Bankruptcy Code, focus on the intent of the parties or family law court without focusing on the particular approach taken.  3 Norton Bankr. L & Prac. 2d § 47:32.

Although domestic support obligations such as alimony or child support would clearly fall under the protection of §523(a)(5), debts created merely for the division of community property would not be protected by this section and would, in fact, be dischargeable.  Therefore, for purposes of this case, the relevant determination will be whether either the parties and/or the family law court intended the payments under Mr. Lyssy's retirement to be for her support or

simply for the division of former community property.

Clearly, it cannot be seriously contended that the Ms. White did not have an ownership interest in the funds that were generated from Mr. Lyssy's military retirement and therefore, the division of those retirement benefits, at least in part, served the interest of dividing this community asset between them.  However, the nature of this asset itself, being a stream of payments over the lifetime of either Mr. Lyssy or Ms. White, shows that its primary purpose is for the support of the recipient.  A military retirement, or any retirement plan in general, is intended to provide support for the service member or employee following his retirement. Additionally, the retirement plan also provides support through a joint and survivor benefit for the service member or employee's family in event of his death.  The underlying purpose here is clear, to provide support.

The purpose and result of a defined benefit retirement plan or pension-type retirement plan, such as the military retirement benefit at issue herein, can be contrasted to a defined contribution, or 401(k)-type retirement plan.  The purpose of a 401(k) plan is to allow contributed money to grow tax-free, basically allowing the money that would otherwise be withdraw to pay taxes, to go toward earning additional interest.  The division of a 401(k) plan pursuant to a property settlement or divorce decree is not very much different than dividing a joint bank account, each spouse is entitled to one-half of the community funds put into the account plus one-half of any interest earned by the community funds.  A pension-type retirement, on the other hand, does not have an actual account balance and is therefore, more difficult to value.  It is basically the right of the employee and, if deceased or divorced the spouse, to receive a portion of his salary every month until his death.  There are, of course, exceptions in some cases, such as an option to take a lump sum payment, but for the most part, these types of retirement plans provide the participants with the right to receive support from the employer for the remainder of his or her

life.  Mr. Lyssy's military retirement plan is clearly part of the latter group of retirement benefits.  His plan provides for his support during his lifetime, and by virtue of the state community property laws, it provides support for Ms. White as well.

As set forth above, the court should look to the parties' intent as to whether or not the debt in question qualifies as being for the maintence or support for the former spouse.  Although Mr. Lyssy's past conduct in retaining 100% of the retirement benefit payments he received from the military coupled with his vigorous defense of Ms. White's attempts to collect her portion of the retirement benefits through legal proceedings, gives some clue as to his intent to provide support for her.  However, his obligation to provide support, or that of the military, did not arise at the time of the trial in the family court and so therefore, his present intent should not control how this issue is decided.

The U.S. Military's obligation to provide the support payments/retirement benefits to Mr. Lyssy, and as such his wife at the time, Ms. White, arose at the time Mr. Lyssy qualified for those benefits.  Namely, during the time period he was in the military, seventeen years of which were during his marriage to Ms. White.  Mr. Lyssy's very participation in the retirement plan during his marriage to Ms. White signifies his intent to provide for her support.   For her part, Ms. White is depending on the retirement benefit payments to provide for her support.  The trial in the family court merely quantified the amount of the plan benefits that were attributable soley to Ms. White, it did not signify the inception of Mr. Lyssy's intent to begin providing or using the retirement benefits to provide for Ms. White's support.  The parties' intent (i.e. the intent to have the military retirement benefits provide support to the parties) was present, therefore, at the time the benefits were earned, that being during Mr. Lyssy's military service.

Whether the miliary retirement benefits are paid to Mr. Lyssy on behalf of Ms. White or to Ms. White directly through the issuance of a qualified domestic relations order (or the military

equivalent thereto), the purpose of the payments are clearly to provide support and they are, in fact, in furtherance of Mr. Lyssy's duty to provide support for his ex-wife, Ms. White.

For these reasons, the creditor, Mary Smith Lyssy White, contends that the requirements of 11 U.S.C Sec. 523(a)(5) are met and her complaint should be granted.

Dated: February 9, 2006

Respectfully Submitted:

/s/David H. Cliburn
David H. Cliburn (Bar Roll #21529)
ATTORNEY AT LAW
2008-B Burnside Ave.
Gonzales, LA 70737
(225)647-4118

# IN THE UNITED STATES BANKRUPTCY COURT
## Middle District of Louisiana

| | | |
|---|---|---|
| **IN RE**: | } | **CASE NO.** 05-10624 |
| Harold Lyssy | } | |
| | } | Chapter 7 |
| **DEBTOR** | } | |
| | | |
| Mary Smith Lyssy White | } | |
| **PLAINTIFF** | } | |
| **VERSUS** | } | **ADVERSARY NO.** 05-1074 |
| Harold Lyssy | } | |
| **DEFENDANT** | } | |

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing Pretrial Memorandum has been served upon the following:

James M. Herpin
5555 Hilton Ave., Ste. 555
Baton Rouge, LA 70808

through facsimile as well as by depositing a copy of same in the U.S. Mail, properly addressed, postage prepaid, this 9th day of February, 2006.

/s/David H. Cliburn
DAVID H. CLIBURN